IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| SPENCER STRENO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:16-cv-00068 |
| | ) | |
| SHENANDOAH UNIVERSITY, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Spencer Streno, a former student at defendant Shenandoah University (Shenandoah or the University), filed this action after he was dismissed from the University. Streno's first amended complaint asserts claims for breach of implied and express contract, violation of Title IX of the Education Amendments Act of 1972 (Title IX), 20 U.S.C. § 1681, and violation of 42 U.S.C. § 1981, all of which stem from allegations that Shenandoah discriminated against Streno on the basis of his sexual orientation and failure to conform to gender norms when it erroneously determined that Streno had committed sexual assault and dismissed him. Streno also claims that Shenandoah used his picture in an advertisement for a University-sponsored event without his permission in violation of Virginia Code § 8.01-40. (*See generally* First Am. Compl. (Compl.), Dkt. No. 18.) Before the court is Shenandoah's motion to dismiss Streno's claims. That motion has been fully briefed and was argued before the court. For the reasons stated below, the court will grant Shenandoah's motion to dismiss Streno's Title IX and § 1981 claims and decline to exercise jurisdiction over the remaining state law claims.

I. BACKGROUND

Spencer Streno, an openly homosexual man with "more feminine tendencies and

mannerisms than typical heterosexual men" (Compl. ¶ 10), enrolled at Shenandoah University[1] in August 2012. As a musical theater student, Streno was a member of "the Conservatory," a group of students working toward various degrees in the performing arts. He was also a member of an improvisational comedy troupe called "LOAF." Until the final semester of his senior year, Streno's record at Shenandoah was free of disciplinary issues. However, on February 15, 2016, Taylor Bloom and Riley Scott—two friends of Streno's and fellow members of the Conservatory and LOAF—filed complaints with the University, accusing Streno of sexually assaulting them in November 2013 and April 2014, respectively.

Bloom's complaint asserted that Streno sexually assaulted him in November 2013 after a cast party for a theater production where "all parties involved" consumed a large amount of alcohol. (*Id.* ¶ 21.) Following the party, at which Streno and Bloom were observed "playfully kissing," Streno drove Bloom and a female student back to the dormitories. (*Id.* ¶ 26.) At some point that night, Bloom came to Streno's room, and the two began to kiss. Streno attempted to touch Bloom's penis, but stopped when Bloom said "we should stop." (*Id.*) Bloom claimed that he was "blacked out" from the alcohol that he had consumed and believed he was kissing the female student that had returned to the dormitory with him and Streno, rather than Streno. (*Id.* ¶ 24.) However, Bloom did not state that the kiss was nonconsensual, and admitted it was possible that he kissed Streno back. Streno and Bloom remained close following the alleged assault: Streno asserts that he and Bloom kissed at many public parties during their time as classmates, and he submitted with his complaint a picture of Bloom kissing him on the cheek over a year after the cast party.

Scott's complaint alleged that Streno assaulted him at a party following a LOAF event that was hosted by another school's improvisation group in April 2014. Scott claimed that,

---

[1] Shenandoah University is a private liberal arts university that accepts federal funding.

during the party, Streno put his hand under Scott's crotch and used his fingers to lift Scott off the couch while simultaneously penetrating his anus through his clothes. Though Streno's memory of that night is "basically eradicated" due to his alcohol consumption (*id.* ¶ 31), he notes that the alleged act is "physically impossible" and that no one from Shenandoah or the other school reported any assault. (*Id.* ¶ 34.) Like Bloom, Scott remained close with Streno following the alleged assault, and Streno's complaint included pictures of Streno and Scott hugging months after the incident. Streno alleges that he had an argument with Scott about LOAF via text message shortly before Scott filed his complaint and that Scott filed the complaint to retaliate against him for the actions that led to the argument.[2]

During Shenandoah's investigation into the sexual assault allegations, another witness claimed that Streno had forcibly pushed and kissed him at the Winchester Apple Blossom Festival at some point between April 24 and May 3, 2015. Although Streno admits that he kissed the witness at the Harvest Festival, he claims that the kiss was consensual. Again, Streno submitted a photograph of himself and the witness kissing on May 2, 2015, apparently consensually.

On February 24 and March 8, 2016, Streno met with Whitney Pennington, Shenandoah's Title IX Coordinator. Streno claims that Pennington's investigation was "inadequate and biased" and that the "finding report" she prepared failed to include evidence of the text messages between Streno and Scott and interviews with Streno's witnesses. (*Id.* ¶¶ 43–44.) Pennington then referred the matter to a formal hearing panel for a hearing on March 28, 2016. At that hearing, Streno asserts, the panel did not give appropriate weight to evidence of his innocence, including pictures of Bloom and Scott being affectionate with Streno after the alleged incidents. The hearing panel also denied Streno the chance to make an impact statement as required by

---

[2] It is not clear from the complaint whether Streno believes Bloom had a similar motive.

Shenandoah's policy.

After the hearing, Streno received a letter from the hearing panel chair informing him that the panel was recommending that Streno be dismissed from the University. Streno appealed the decision to the appeal officer on the grounds that he was not allowed to make an impact statement. Streno's appeal also discussed a statement from a witness who had seen Bloom and Streno kissing consensually at the November 2013 party and noted that, even by Bloom's description, the November 2013 encounter between Streno and Bloom was consensual. Streno's appeal was upheld because he had been denied the opportunity to make an impact statement; however, on May 4, 2016, ostensibly after giving Streno the chance to make a victim impact statement, the hearing panel upheld Streno's dismissal.

On October 21, 2016, Streno filed this action against Shenandoah, claiming breach of implied and express contract and violations of Title IX and § 1981. On December 5, 2016, roughly seven months after Streno was expelled from the University, graduated students received a flyer advertising an alumni reunion for Conservatory graduates from Shenandoah's Alumni Association. The flyer included a picture of Streno. Streno claims that he never gave Shenandoah permission to use the picture and that any implied permission he gave was revoked when he was dismissed from the University. Streno subsequently amended his complaint to include a claim for unauthorized use of his image under Virginia Code § 8.01-40.

## II. DISCUSSION

### A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

4

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, and establishes "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Unadorned allegations of wrongdoing, "formulaic recitation[s]" of the elements of a claim, and "'naked assertions' devoid of 'further factual enhancement'" are insufficient to state viable claims. *Id.* (quoting *Twombly*, 550 U.S. at 555–57).

### B. Violation of Title IX

In relevant part, Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participating in, be denied benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681. Streno asserts that Shenandoah discriminated against him on the basis of his sexual orientation and failure to conform to sex stereotypes by finding him guilty of sexual misconduct despite evidence of his innocence and by dismissing him from the University, and it therefore violated Title IX. (*E.g.*, Compl. ¶¶ 76–77.)

These theories of liability raise questions about the scope of Title IX. It is not clear that discrimination on the basis of sexual orientation is cognizable under Title IX. The Fourth Circuit has rejected the theory in the Title VII context, *Wrightson v. Pizza Hut of Am., Inc.*, 99 F.3d 138, 143 (4th Cir. 1996); *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 815–16 (E.D. Va. 2016) (discussing *Wrightson*'s continuing viability), and recognized that its Title VII opinions provide a "helpful guide" for interpreting Title IX. *Jennings v. Univ. of N.C.*, 444 F.3d 255, 272 (4th Cir. 2006). For their part, district courts in this circuit have consistently found that Title IX claims cannot be based on sexual orientation discrimination. *See Kirby v. N.C. State Univ.*, No. 5:13-cv-850, 2015 U.S. Dist. LEXIS 30135, at *11–12 (E.D.N.C. Mar. 10, 2015), *aff'd*, 615 F. App'x

5

136 (4th Cir. 2015) (unpublished); *Mayes v. Bd. of Educ.*, No. 13-cv-3086, 2013 U.S. Dist. LEXIS 168513, at *1–2 (D. Md. Nov. 26, 2013); *M.D. v. Sch. Bd. of Richmond*, No. 3:13-cv-329, 2013 U.S. Dist. LEXIS 76936, at *9–10 (E.D. Va. May 30, 2013), *vacated*, 560 F. App'x 199 (4th Cir. 2014) (unpublished). Streno urges the court to reach the opposite conclusion, based on the reasoning of district courts from other circuits. *See Videckis v. Pepperdine Univ.*, 150 F. Supp. 3d 1151 (C.D. Cal. 2015); *Pratt v. Indian River Cent. Sch. Dist.*, 803 F. Supp. 2d 135, 151 (N.D.N.Y. 2011); *Riccio v. New Haven Bd. of Educ.*, 467 F. Supp. 2d 219, 226 (D. Conn. 2006).

Streno's theory that he was discriminated against on the basis of his feminine tendencies stands on firmer ground. The Supreme Court has recognized a sex stereotyping theory like Streno's in the Title VII context. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250–51 (1989). However, the Fourth Circuit has not yet decided whether sex stereotyping claims are actionable under Title IX, and the issue has received little meaningful discussion among the district courts. *See Kirby*, No. 5:13-cv-850, 2015 U.S. Dist. LEXIS 30135, at *9–12 (assuming that the Fourth Circuit would recognize a Title IX claim based on sex stereotyping).[3] However, the court need not decide whether sexual orientation and sex stereotype discrimination are cognizable under Title IX because, even if they are, Streno has not plausibly alleged that his dismissal was the result of sexual orientation or sex stereotype discrimination.

In *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994), the Second Circuit identified two theories by which a student may attack a university's disciplinary proceeding under Title IX. The first theory asserts an "erroneous outcome," *id.* at 715, and "applies when a plaintiff claims that a university disciplinary proceeding wrongly found him responsible for an offense." *Doe v.*

---

[3] The dissent in *M.D. v. School Board of Richmond* asserted that the United States District Court for the Eastern District of Virginia had found that Title IX did not cover sex-stereotyping claims. 560 F. App'x at 205 (Davis, J., dissenting). However, the majority rejected this reading of the district court's opinion. 560 F. App'x at 203 n.5.

6

*Washington & Lee Univ.*, No. 6:14-cv-52, 2015 U.S. Dist. LEXIS 102426, at *25 (W.D. Va. Aug. 5, 2015) (citing *Yusuf*, 35 F.3d at 715). The second theory, called the "selective enforcement" theory, "asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Yusuf*, 35 F.3d at 715. In his opposition to Shenandoah's motion to dismiss, Streno argues that he states viable Title IX claims of sexual orientation and sex stereotype discrimination under both theories. The court will address them in turn.

1. **Erroneous outcome**

In order to state a viable Title IX claim under an erroneous outcome theory, a plaintiff must plead (1) "facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding," and (2) particular circumstances suggesting a causal relationship between that erroneous outcome and gender bias. *Yusuf*, 35 F.3d at 715; *Washington & Lee*, No. 6:14-cv-52, 2015 U.S. Dist. LEXIS 102426, at *25–26. "Allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination [are] not sufficient to survive a motion to dismiss." *Yusuf*, 35 F.3d at 715. Instead, the plaintiff must provide facts that allow the court to infer that the erroneous outcome was the result of discrimination. "For example, plaintiff might point to the existence of 'statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of [sexual orientation or sex stereotypes],' or 'statements reflecting bias by members of the tribunal.'" *Washington & Lee*, No. 6:14-cv-52, 2015 U.S. Dist. LEXIS 102426, at *26 (quoting *Yusuf*, 35 F.3d at 715).

Assuming that Streno's allegations establish that Shenandoah incorrectly found that

7

Streno had committed sexual assault, they fail to establish that Shenandoah did so because of Streno's sexual orientation or feminine tendencies.[4] Streno does not identify any statements by members of the hearing panel or other university representatives expressing bias against homosexual or non-conforming students, or identify any other express evidence of such bias. *See Yusuf*, 35 F.3d at 715. Nor does he allege that Shenandoah was motivated to punish homosexual or effeminate male students accused of sexual assault with particular severity. *See, e.g.*, *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016) (finding allegations that Columbia University punished men more severely in order to address concerns in the student body and media that it did not take sexual assault complaints seriously sufficient to imply discrimination); *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 768 (D. Md. 2015) (finding that plaintiff stated a plausible claim where he alleged that the university wished to show the United States Department of Education and general public that it aggressively disciplined males accused of sexual assault); *Washington & Lee*, No. 6:14-cv-52, 2015 U.S. Dist. LEXIS 102426, at *29 (finding a complaint sufficient based partly on allegations that the school was under pressure from the government to convict male students of sexual assault). Instead, Streno alleges only that some heterosexual, gender-conforming males charged with sexual assault at Shenandoah have not been dismissed from the University.

Although factual allegations that Streno was treated differently from heterosexual or gender-conforming students could certainly indicate that the disparate treatment was the result of

---

[4] As to Streno's sex stereotype theory, Streno does not allege that the hearing panel was even aware that he did not conform to masculine gender norms. Although Streno asserts that he has "more feminine tendencies and mannerisms than typical heterosexual men" (Compl. ¶ 10), he does not describe those mannerisms and tendencies, assert that they were observable, or claim that the members of the hearing panel were otherwise aware of them. Since the hearing panel's decision could not have been based on a characteristic of which it was unaware, Streno's sex stereotype claim fails on that basis. *Cf. Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998) (finding that a plaintiff could not make a prima facie case of Title VII discrimination without evidence that the defendant was aware of the protected activity).

bias, Streno's allegation to that effect is conclusory. Streno claims only that, "[u]pon information and belief, the University has not dismissed heterosexual male students (who adhere to stereotypical gender norms) facing charges of sexual assault when the students making such allegations were female, although there was actual credible evidence of nonconsensual actions in those cases, unlike the charges against Streno." (Compl. ¶ 75.) Although Streno asserts in his opposition brief that he became aware of such cases during his time at Shenandoah, his complaint does not describe any specific instances, the charges in those cases, or the credible evidence Shenandoah ignored. Without any factual support or other explanation for the conclusion that Shenandoah was motivated by bias against him, this conclusory allegation cannot support Streno's claim. *See Doe v. Univ. of Mass.–Amherst*, No. 14-cv-30143, 2015 U.S. Dist. LEXIS 91995, at *27–28 (D. Mass. July 14, 2015) (finding that an allegation that males were "invariably found guilty, regardless of the evidence, or lack thereof," without any supporting data or "credible anecdotal references," were "the type of conclusory statements that *Iqbal* and *Twombly* do not allow the court to consider");[5] *see also McCleary-Evans v. Md. DOT*, 780 F.3d 582, 585–86 (4th Cir. 2015) (finding an allegation that "during the course of her interview, and based upon the history of hires within the Office of Environmental design, . . . [defendants] predetermined to select for both positions a White male or female candidate" to be conclusory) (alternations omitted); *Francis v. Giacomelli*, 588 F.3d 186, 195–96 (4th Cir. 2009) (finding conclusory, in the context of a 42 U.S.C. § 1981 claim, allegations "that the defendants have

---

[5] In *Yusuf*, the Second Circuit found allegations that the defendant college "invariably found [males] guilty" of sexual harassment sufficient to allege causation. 35 F.3d at 716. However, *Yusuf* was decided before *Twombly* and *Iqbal*. A number of courts have considered whether allegations of this kind—*i.e.*, allegations of a pattern of finding males guilty of sexual harassment, often coupled with allegations that the school was reacting to pressure to punish accused male students harshly—were sufficient to state a claim in the wake of those cases, and those courts have reached different conclusions. *See, e.g.*, *Austin v. Univ. of Or.*, 205 F. Supp. 3d 1214, 1223 (D. Or. 2016) (collecting cases). Importantly, Streno does not assert a pattern of discriminating against homosexual or gender non-conforming students; he just claims that some heterosexual men have not been dismissed. Thus the court need not decide whether allegations like those at issue in *Yusuf* are sufficient to allege causation.

never initiated or undertaken the actions of terminating employment and physically removing the employee against white members of the Police Department.") Thus, Streno's allegation, standing alone, is insufficient to establish that Streno's dismissal was the result of sexual orientation or sex stereotype discrimination.

In so finding, the court is mindful of the difficulties a Title IX plaintiff faces in comparing his disciplinary charge to charges brought against other students. Since student disciplinary proceedings are often private, in many cases the information necessary to determine whether similarly situated students had been treated differently may be solely in the defendant's possession. *See Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 187 (D.R.I. 2016). But that informational disadvantage does not excuse Streno from plausibly alleging causation.[6] *See, e.g.*, *Doe v. Regents of the Univ. of Cal.*, No. 150-cv-2478, 2016 U.S. Dist. LEXIS 123612, at *15–16 (C.D. Cal. July 25, 2016). Streno need not plead the facts of other student disciplinary proceedings to which he does not have access in order to state a claim. He must, however, provide some justification for believing that the erroneous outcome of his disciplinary proceeding was the result of discrimination in order to "nudge [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. That Streno has not done so is particularly clear here. Functioning properly, a university's disciplinary process will in some cases punish violators and in some cases protect accused students from baseless allegations. It is therefore to be expected that heterosexual males would, on occasion, be cleared of sexual assault charges. Thus, without more, the fact that some heterosexual, gender-conforming students have been cleared of disciplinary charges raises only "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Allowing Streno to proceed to discovery on that fact alone,

---

[6] Streno's reliance on pre-*Iqbal* and *Twombly* cases for the proposition that he need only provide a short and plain statement of his claim, which can then be given factual content during the discovery process, is unavailing.

in the hopes of finding a similarly situated student on which to base his claim, would authorize the kind of fishing expedition *Iqbal* and *Twombly* meant to avoid.[7] *See Johnson v. Am. Towers, LLC*, 871 F.3d 693, 709 (4th Cir. 2015).

   2. **Selective enforcement**

Streno's selective enforcement claim fails for the same reasons. In order to state a selective enforcement claim, Streno must allege that a similarly-situated, heterosexual or gender-conforming person was treated more favorably by the University. *Armstrong v. James Madison Univ.*, No. 5:16-cv-53, 2017 U.S. Dist. LEXIS 25014, at *19 (W.D. Va. Feb. 23, 2017) (quoting *Mallory v. Ohio Univ.*, 76 F. App'x 634, 641 (6th Cir. 2003)), *R. & R. adopted*, No. 5:16-cv-53, 2017 U.S. Dist. LEXIS 84191 (W.D. Va. June 1, 2017). As discussed, Streno does so entirely in conclusory terms. Accordingly, his Title IX claim must fail.

**C. Violation of 42 U.S.C. § 1981**

Count four of Streno's complaint asserts that, by dismissing him for discriminatory reasons, Shenandoah deprived Streno of his right to make and enforce private contracts in violation of 42 U.S.C. § 1981. Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." It is well-established that this statute deals with discrimination on the basis of race or alienage and does not support claims for sex or gender discrimination. *See e.g., Runyon v. McCrary*, 427 U.S. 160, 167–68 (1976) (noting

---

[7] In *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016), the Second Circuit applied the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to a sex discrimination claim brought under Title IX. The *Doe* court held that a Title IX sex discrimination plaintiff need only plead facts "supporting a minimal plausible inference of discriminatory intent" and that allegations that university officials were motivated to punish male students in order to protect themselves from public criticism about Columbia's response to sexual assault complaints were sufficient to state a plausible sex discrimination claim. 831 F.3d at 55, 57. Even under the pleading standard articulated in *Doe*, Streno's allegations would be insufficient to state a plausible claim. Unlike the plaintiff in that case, Streno does not allege that Shenandoah was under public pressure to punish homosexual or gender non-conforming students accused of sexual assault, and he therefore fails to connect his dismissal to anti-homosexual or sex stereotype bias. *See Austin*, 205 F. Supp. 3d at 1226–27 (distinguishing *Doe* on that basis).

that § 1981 "is in no way addressed to . . . categories of selectivity" based on sex); *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 693 (2d Cir. 1998) (concluding that claim of gender discrimination was "plainly outside the scope of § 1981"); *Jones v. Bechtel*, 788 F.2d 571, 574 (9th Cir. 1986) (same). So Streno's claim, which asserts discrimination on the basis of sexual orientation and sex stereotyping, is not cognizable under § 1981 and must be dismissed.

**D. State Law Claims**

Having determined that Streno's Title IX and § 1981 claims must be dismissed, the court must now decide whether to exercise jurisdiction over Streno's remaining state law claims for breach of implied and express contract and violation of Virginia Code § 8.01-40. The court has no independent basis for jurisdiction over those claims: they raise no federal questions, and, although Streno claims diversity jurisdiction, he fails to allege his own citizenship. *See* 28 U.S.C. § 1332(a). Accordingly, the court may consider Streno's state law claims only if it exercises supplemental jurisdiction.

Federal district courts may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). "The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away." *Nelson v. Green*, 965 F. Supp. 2d 732, 750–51 (W.D. Va. 2013) (citing *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995)); *see* 28 U.S.C. § 1367(c)(3). In exercising that discretion, courts should consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110. "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of

the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Each of these factors favors dismissal here.[8] With Streno's Title IX and § 1981 claims dismissed, his only remaining claims are state law claims that raise no underlying issues of federal policy. Moreover, at this early stage in the case, dismissing this action to be pursued in state court will not waste judicial resources or result in unfairness to either party. Thus, the court declines to exercise jurisdiction over Streno's remaining state claims.

III. CONCLUSION

For the foregoing reasons, the court will grant Shenandoah's motion to dismiss and dismiss Streno's claims without prejudice, with the exception of his claim under § 1981, which the court will dismiss with prejudice.

Entered: September 30, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

[8] Streno's unauthorized use claim is largely unrelated to his claims of discrimination and is arguably not part of the same case or controversy as Streno's federal claims. 28 U.S.C. § 1367(a). Since the court declines to exercise supplemental jurisdiction anyway, it need not address this issue.